Ruffin, J.
 

 The answers and proofs establish very satisfactorily the capacity of the party to the deed, and that there is nothing in the manner in which it was obtained to impeach it.
 

 It was insisted, however, that it is void, because it is a deed of emancipation, or for emancipation, and such a deed cannot be effectual, in in our law, since the only emancipation provided for, in the statute, is either by the owner himself, upon petition to. the superior court, or by an executor under the direction of a will, and on petition. It is inferred that the deed is void, because the act declares, that no slave shall be set free but according to the provisions of the act; which are supposed to exclude every mode of emancipation, but the two just mentioned. That seems, to the Court, to be an entire misapprehension of the act. Neither a deed of emancipation by the owner, nor a direction in a will to that effect, constitutes a valid emancipation here, until allowed by the court, as prescribed in the statute. But when a deed is made by the owner of a slave to another person, upon a trust, to have the slave emancipated, there, the trustee becomes the owner, and he may, as such, either proceed to procure the emancipation here, under our law, or carry the slave to another country, where he may be free without observing the ceremonies which we require. It is totally immaterial to this purpose, by what kind of instrument the trust, for emancipation, may be created, whether a deed or a will. It is most commonly, indeed, a will, because most persons wish to keep the control of their property as long as they live, and, therefore, prefer a revocable, to an irrevocable instrument, on such occasions. The question, however, on each, is always the same; namely, whether the particular kind of emancipation prescribed, or contemplated, contravenes the provisions or the policy of our law. If it does not, the trust is not illegal, and will be executed ; while, if it does, that trust becomes ineffectual, and will.
 
 *218
 
 result to the donor, or go over to some other person, according to the limitations contained in the instrument. It happens, that one of the earliest cases, on this subject, arose on a deed, that of
 
 Stevens
 
 v. Ely, 1 Dev. Eq. 493; and it did not occur to any one, that any thing depended on that circumstance, but the decision was founded exclusively on the fact, that upon the face of the deed, there was a trust for beeping the negroes here, “ on the said Ely’s land,” either in an emancipated state, or in one of qualified bondage; and whether it were the one or the other, it was equally against law. Therefore, the Court held, that the trustee could not hold them as slaves, but that the trust resulted to the donor and her administrator. It was argued, indeed, in that case, that the Court would give no relief against the trustee, because the purpose being unlawful, and the deed having passed the legal title, equity would help neither party. In reference to that point, Chief Justice Henderson, states clearly, that there can be no difference between a trust declared by deed, or by will, and that, if it be illegal, a trust will result in both cases. Now, by repeated decisions, it is the settled law of this State, that such a trust as the one before us, for carrying the negroes out of North Carolina, to live as free persons, in a free country, is not illegal, but perfectly valid. The cases were all reviewed, and the question fully discussed in
 
 Thompson
 
 v. Newlin, when finally decided on the petition to rehear, 8 Ire. Eq. 32, and has ever since been considered at rest.
 

 It was further objected, that the the trust for emancipation fails, because it is made to depend on the election of the slaves to go away as free persons, or to stay here as slaves, and they have not a legal capacity to make an election. It may be remarked on that, first, that the point will not bear debate in the courts of this State, as the contrary has been so often held and acted on here as to be concluded. In the next place, it is not true in point of fact or law, that slaves have not a mental or a moral capacity to make the election to be free, and, if needful to that end, to go abroad for that purpose. Erom the nature of slavery, they are denied a legal capacity
 
 *219
 
 to make contracts or acquire property while remaining in that state; but they are responsible human beings, having intelligence to know right from wrong, and perceptions of pleasure and pain, and of the difference between bondage and freedom, and 'thus, by nature, they are competent to give or withhold their assent to things that concern their state. All that is implied, necessarily, as assumed in law, where emancipation is allowed at all; for, it changes the relation between the owner and the slave, and that requires the assent of both, and is sanctioned by the law as existing in nature. It may be regulated or even prohibited by the law. But no one ever thought that it required a municipal law to confer the right of manumission on the owner, or the capacity of accepting freedom by the slave. They pre-exist, and are founded in nature, justas other capacities lor dealings between man and man. Hence, too, dispositions of property, as a provision for them, after emancipation shall have taken effect, have been sustained as executory devises upon the same principle, that a legacy to one,
 
 mi jwis
 
 is. The power of emancipation includes not only the power of absolute emancipation, but of one on a condition ; provided the condition be not of a nature to defeat the provisions or policy of our law prohibiting emancipated negroes from residing in this State; and that is, plainly, not the case where the trust is that they shall remain here as slaves, unless they can be sent away, with their own consent, given within one year, for the purpose of being free elsewhere. The Court cannot hesitate in holding, that to the admitted capacity of accepting emancipation, there is inherent a legal capacity to assent to all those incidents which go to make the emancipation itself effectual.
 

 But, if those positions were all untrue, the case for the plaintiff would be none the better: since, in this case, the trust for the other defendant, Eindley, effectually disposes of the whole property, and leaves nothing to result. The deed is not tainted by any immoral or illegal purpose avoiding the whole deed. The most that has been, or can be said against it, as affected by its contents merely, is that one of the trusts cannot be carried
 
 *220
 
 into effect. But that cannot prevent another trust, which in itself is entirely lawful, from being executed. It is like the .case of a will, which directs emancipation here, and an application to the Legislature to allow it, and, if that shall fail, gives the slaves over, as property, to another person ; in which ca^e there is no doubt that, supposing no secret illegal trust attached to the ulterior limitation, it would be good. When, therefore, the capacity of the donor in this case to execute the deed is established, it puts an end to all right in the plaintiff.
 

 Pee Curiam, Bill dismissed with costs.